UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MARLO PEDERSEN,                )
                               )
     *Plaintiff*              )
                               )
v.                             )    *No. 2:17-cv-00389-GZS*
                               )
FAIRPOINT COMMUNICATIONS,      )
INC. and FAIRPOINT LOGISTICS, INC., )
                               )
     *Defendants*             )

### *MEMORANDUM DECISION AND ORDER ON MOTION TO AMEND COMPLAINT*

In this action alleging workplace sex discrimination and retaliation under the Family and Medical Leave Act ("FMLA") and the Maine Family Medical Leave Requirements Act ("MFMLRA"), the plaintiff seeks leave to amend her complaint to add a claim for promissory estoppel. *See* Plaintiff['s] Motion for Leave To Amend Complaint ("Motion") (ECF No. 10) at 1. For the reasons that follow, I grant the Motion.

### I. Applicable Legal Standards

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The First Circuit has explained:

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. . . . As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. Scheduling orders, for example, typically establish a cut-off date for

1

amendments (as was apparently the case here). Once a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b). This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent. Where the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show "substantial and convincing evidence" to justify a belated attempt to amend a complaint.

*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004) (citations, internal quotation marks, and footnotes omitted).

The plaintiff filed the Motion on January 30, 2018, *see* Motion at 3, after the expiration of the parties' January 5, 2018, deadline to amend pleadings, *see* Scheduling Order (ECF No. 5) at 2. Therefore, the "good cause" rule applies.

## II. Factual Background

The operative complaint alleges that the plaintiff was employed by the defendants as a supply chain database analyst from May 2009 to May 2016. *See* Complaint ("Operative Complaint") (ECF No. 3-3), attached to Affidavit of Mark V. Franco (ECF No. 3), ¶¶ 5-17. The plaintiff was pregnant in 2015, and, in or about April 2015, the defendants granted her request for leave, which began in May 2015. *See id.* ¶¶ 7, 10-11.

The defendants' agent with regard to the leave was the Reed Group. *See id.* ¶ 12. The Reed Group confirmed on multiple occasions that the plaintiff's leave would be extended through August 2, 2016. *See id.* ¶ 13. The defendants told the plaintiff that, upon the expiration of her leave, she would be able to return to her job on "the same terms and conditions" that were in place at the beginning of her leave. *Id*. ¶ 14. The defendants refused the plaintiff's requests that, following her leave, she be allowed to telecommute, as she had on a part-time basis before her leave, and that she be provided a "mother's room" at the workplace. *Id.* ¶¶ 8, 15-16. On May 16,

2

2016, during the course of the plaintiff's authorized leave, she was notified that her employment had been terminated effective May 3, 2016. *See id.* ¶ 17.

The plaintiff timely filed a charge of discrimination against the defendants with the Maine Human Rights Commission, which provided her with a right-to-sue letter dated August 22, 2017. *See id.* ¶¶ 21-22.

### III. Discussion

#### A. Diligence in Seeking To Assert Promissory Estoppel Claim

The plaintiff seeks to amend her complaint to add a claim for promissory estoppel (Count IV). *See* Motion at 1; [Proposed] Amended Complaint and Demand for Jury Trial ("Proposed Amended Complaint") (ECF No. 10-1), attached thereto, ¶¶ 35-41.

In Maine, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Martin v. Scott Paper Co.*, 511 A.2d 1048, 1050 (Me. 1986) (citation and internal quotation marks omitted). "The remedy granted for breach may be limited as justice requires." *Id*.

The plaintiff proposes to allege, in relevant part, that through both written policies and oral and written promises by their authorized employees and agents, the defendants "promised [her] that she could take at least one full year of 'caregiver leave' without suffering the loss of her job or other penalty[,]" and that they breached that promise "by terminating her employment when she sought to return to work at the end of her approved leave." Proposed Amended Complaint ¶¶ 36, 40.

As noted above, the "good cause" standard "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Steir*, 383 F.3d at 12 (footnote omitted). This court has noted that "[f]actual allegations that were within the plaintiff's

3

knowledge at the time the action was initiated cannot serve to meet the 'good cause' standard." *C&M Prop. Mgmt. LLC v. Moark LLC*, No. 2:15-cv-00336-GZS, 2016 WL 7480271, at *3 (D. Me. Dec. 29, 2016).

The plaintiff asserts that, in the course of discovery, she "ascertained facts suggesting that she also has a viable claim for promissory estoppel, based on promises made by Defendants concerning her leave." Motion ¶ 2. She contends that she was not in a position to file the instant motion prior to the January 5, 2018, deadline to amend pleadings "because the vast bulk of the documents produced by Defendants in response to [her] First Request for Production of Documents dated November 22, 2017[,] were not served until January 10, 2018." *Id*. ¶ 3.

The defendants rejoin that the plaintiff fails to explain how the documents that they provided in discovery suddenly illuminated the existence of a claim for promissory estoppel. *See* Defendants' Objection to Plaintiff's Motion for Leave To Amend Complaint ("Opposition") (ECF No. 15) at 2. They contend that she possessed all of the information she needed to include her claim for promissory estoppel in her original complaint, as evidenced by her answers to interrogatories demonstrating her knowledge "of so-called 'promises[,]'" including promises that she indicated were made to her by Robert Oldmixon on January 28, 2016. *Id*. at 2-3. They add that the plaintiff was also well aware, at the time she filed her complaint, of the written policies on which she now relies. *See id*. at 4. They ask that the court "require Plaintiff to establish 'good cause' by affirmation or affidavit as to why she could not have asserted a claim of promissory estoppel when she filed her Complaint on August 29, 2017." *Id*.

The plaintiff counters that she acted with reasonable diligence in the circumstances. *See* Plaintiff's Reply Memorandum in Support of Motion for Leave To Amend Complaint ("Reply") (ECF No. 16) at 5. She acknowledges that she provided the following response to the defendants'

Interrogatory No. 12, which requested information about the source of her belief that she would return to the same job duties following her leave:

> On January 28, 2016, [the plaintiff's manager] Robert Oldmixon agreed that he would inform Plaintiff by telephone if her position was no longer going to be held for her. He indicated that unless she was informed otherwise, her position would continue to be held for her while she was on approved leave. Plaintiff was never told that her position had been eliminated until May 16, 2016. . . . On the contrary, Mr. Oldmixon kept indicating he was anxious for Plaintiff to return to work. Consequently, Plaintiff was led to understand that she would be permitted to return to her employment in the Supply Chain Department under the same terms and conditions that existed at the time her leave started.

*Id.* at 3-4. However, she asserts that it was this information, combined with documents produced on January 10, 2018, that led her trial counsel to recognize, after completing an approximately two-week-long review of the voluminous 3,500-page production, that she had a distinct, trial-worthy claim for promissory estoppel. *See id*. at 2, 4.

The plaintiff identifies, and attaches to her reply brief, seven documents from that production, consisting of an (i) an October 29, 2015, email exchange in which Helene Anderson, a Senior HR Business Partner for defendant Fairpoint Communications, Inc., advised her of the maximum leave period for a caregiver leave (12 months) and her job reinstatement rights, and (ii) a series of letters from the Reed Group to Oldmixon providing revised estimates of the plaintiff's return to work date and notifying Oldmixon of the Reed Group's actions on various requests by the plaintiff for extension of her caregiver leave, culminating with an April 25, 2016, letter to Oldmixon indicating that the plaintiff had requested an extension of caregiver leave, was eligible for such leave through May 2, 2016, and would have 2.18 months of caregiver leave remaining as of her leave end date. *See id*. at 2-3; Exhs. A-F (ECF No. 16-1), attached thereto.

She asserts that, prior to reviewing those documents, her counsel viewed the defendants' representations that she could take maternity leave without penalty, and her subsequent termination

5

arising from that leave, as simply part of the factual support for her claims that the defendants retaliated against her for exercising her state and federal family leave rights and discriminated against her on the basis of her sex. *See* Reply at 4. She contends that the newly-produced documents confirmed that she had been told that she could take up to one year of leave to care for her newborn and that the defendants approved extensions of both her leave of absence and her return to work date with the full knowledge of her manager. *See id*.

She points out that, in *McGowen v. Four Directions Dev. Corp*, No. 1:12-cv-00109-JAW, 2013 WL 2455977 (D. Me. June 6, 2013), the court granted a plaintiff's motion to amend a complaint more than eight months after the deadline to amend pleadings had passed and well after the discovery deadline had elapsed, finding that, "although the plaintiff had 'made at best a marginal showing of good cause for her delay,' in that she had discovered one of the documents on which she relied to justify the amendment, 'other considerations favor[ed] relaxing the Rule 16(b) standard.'" *Id*. at 5 (quoting *McGowen*, 2013 WL 2455977, at *5).[1] The *McGowen* court explained, "In many of the cases where courts have disallowed amendments under Rule 16(b), the proposed amendments would have substantially altered the plaintiff's case." *McGowen*, 2013 WL 2455977, at *5. In *McGowen,* "by contrast, the proposed amendments merely refine[d] and add[ed] detail to allegations already before the Court." *Id*.

The plaintiff contends that here, as in *McGowen*, the new factual allegations generally are consistent with the allegations of the original complaint, and the proposed amendment merely

---

[1] The plaintiff focuses on the status of the *McGowen* case at the time the court granted McGowen's motion. The relevant time frame is its status as of the time McGowen filed her motion, which was more than six months after the expiration of the deadline to amend pleadings and approximately a month after the discovery deadline had lapsed. *See McGowen*, 2013 WL 2455977, at *1. Still, this was a significant delay. McGowen did not file her motion to amend until less than two weeks before a scheduled Local Rule 56(h) conference with the court to discuss the defendants' notice of intention to file for summary judgment. *See id*.

6

formalizes "what the parties exchanged during the recent court-sanctioned discovery." *Id.* (quoting *McGowen*, 2013 WL 2455977, at *5).

The question of whether the plaintiff was reasonably diligent in seeking to amend her complaint to add a claim for promissory estoppel is a close one. She has known since May 2016, when she learned that her employment had been terminated, whether she relied to her detriment on promises made by the defendants. Yet, while the newly-discovered documents cannot be said to have been essential to the assertion of a claim of promissory estoppel, they do, at the least, tend to buttress the plaintiff's contention that promises regarding the length of her leave were made. And, once she obtained and reviewed the documents produced on January 10, 2018, she promptly filed the instant motion, less than one month after the expiration of the deadline to amend her complaint and about six weeks before the close of discovery.

As in *McGowen*, the fact that the plaintiff lacked these documents constitutes at least a marginal showing of good cause for her delay. *See McGowen*, 2013 WL 2455977, at *5. Indeed, it is a more robust showing than some that both the First Circuit and this court have deemed deficient in analyzing whether good cause has been shown for the tardy filing of a motion to amend a complaint. *See, e,g*, *Cruz v. Bristol-Myers Squibb Co., PR, Inc.*, 699 F.3d 563, 570 (1st Cir. 2012) (three-month delay blamed on plaintiff's counsel's difficulty obtaining document in plaintiff's possession as a result of plaintiff's "move to Florida and ill-defined health problems"); *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004) (five-month delay blamed on "failure of communication" between local counsel and lead counsel); *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008) (11-month delay attributed to plaintiff's belief that "it would prevail on [defendant's] motion to dismiss without any need to further amend"); *United States v. Kimball*, No. 2:14-cv-00521-DBH, 2016 WL 5416462, at *2, 4 (D. Me. Sept. 28,

2016) (more than yearlong delay attributed to plaintiff's need to rethink litigation strategy following court's summary judgment ruling); *Flood v. Bank of Am. Corp.*, No. 1:12-cv-00105-GZS, 2012 WL 6111451, at *1, 3 (D. Me. Dec. 10, 2012) (lengthy delay attributed to discovery of information at deposition; however, plaintiff herself had been present at meeting that was subject of deposition and waited an additional two months after deposition to file motion to amend); *C&M*, 2016 WL 7480271, at *3 (more than three-month delay blamed on need to confirm already known facts at deposition); *Gardner v. Thomas*, No. 1:13-cv-331-GZS, 2014 WL 916397, at *1 (D. Me. Mar. 10, 2014) (more than monthlong delay attributed to need to correct purported deficiencies identified in recommended decision issued several days prior to expiration of deadline to amend complaint).

## B. Prejudice to Defendants in Permitting Claim

The plaintiff contends that the amendment of her complaint would cause no prejudice to the defendants because, as of the time of the filing of her Motion, (i) there was ample time to conduct further discovery prior to the parties' March 9, 2018, discovery deadline, (ii) the parties had yet to take any depositions, and (iii) her promissory estoppel claim was based on the same set of facts as in the original complaint, plus documents in the sole control of the defendants. *See* Motion ¶ 5.

The defendants do not dispute this other than to note that, because they likely would file a motion to dismiss Count IV if the court permits the amendment, the plaintiff's deposition likely would have to be delayed and the scheduling order likely would need to be amended to permit additional time for discovery. *See* Opposition at 3-4.[2]

---

[2] I do not construe the defendants' representation that they likely would seek to dismiss Count IV as an argument that the amendment is futile. *See* Opposition at 3-4. However, to the extent that they mean to press that point, it is waived for lack of a reasoned argument that the proposed new claim is without merit. *See United States v. Zannino,* 895 F.2d

While the good cause analysis under Rule 16(b) focuses more on the diligence of the moving party than on any prejudice to the non-moving party, *see Steir*, 383 F.3d at 12, prejudice remains a relevant consideration. "The longer a plaintiff delays in moving to amend its complaint, the more likely the motion to amend will be denied." *Hearts with Haiti, Inc. v. Kendrick*, No. 2:13-cv-39-JAW, 2014 WL 12650625, at *2 (D. Me. May 30, 2014). "Particularly disfavored are motions to amend whose timing prejudices the opposing party by requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy[.]" *Steir*, 383 F.3d at 12 (citation and internal quotation marks omitted).

I conclude that here, as in *McGowen*, despite the plaintiff's relatively weak showing of diligence, the lack of prejudice to the party-opponents tips the balance in favor of allowance of the amendment.

First, the plaintiff filed her motion considerably earlier in the timeline of the case than did the plaintiff in *McGowen*: promptly after her counsel completed his review of the substantial January 10, 2018, document production, less than a month after the expiration of the deadline to amend pleadings, and well before the close of discovery. *Compare McGowen*, 2013 WL 2455977, at *1.

Second, the parties to date have not sought any extension of the court's scheduling order deadlines; nor is it clear that they will necessarily need to do so now.

Finally, while, in *McGowen*, the plaintiff did not seek to assert a new claim but, rather, merely refine an existing one, *see id.* at *2, in this case, the claim that the plaintiff proposes to add is based on information already known to the defendants.

---

1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

These circumstances materially distinguish this case from others in which this court denied motions to amend based at least in part on their prejudicial timing. *See, e.g., Hearts with Haiti*, 2014 WL 12650625, at *2 ("In this case, where discovery is closed and the court has held the pre-filing conference that is required by Local Rule 56(h) when a party has indicated that it will file a motion for summary judgment, permitting supplementation would unduly delay this litigation and prejudice the defendant.") (citations and internal punctuation omitted); *Gray v. United States*, No. 2:10-cv-467-DBH, 2011 WL 5191294, at *6 (D. Me. Oct. 31, 2011) (rec. dec., *aff'd* Nov. 18, 2011) (plaintiff sought, "subsequent to the close not only of the deadline for amending pleadings but also of both the discovery and dispositive motion deadlines, to allege bases for her Count III claim that seemingly could have been alleged when her complaint was filed").

Whether the plaintiff meets Rule 16(b)'s good cause standard is, as noted, a close question. However, I resolve the question in her favor in the totality of the circumstances, observing, as did the court in *McGowen*, that the purpose of Rule 15, which governs the amendment of pleadings, "is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *McGowen*, 2013 WL 2455977, at *6 (citation and internal quotation marks omitted). The relative promptness with which the plaintiff filed the instant motion following the lapse of the deadline for amending pleadings counsels against precluding her opportunity to have her promissory estoppel claim heard on its merits. Any prejudice arising from the need to conduct limited additional discovery can be mitigated by modest adjustments to the parties' remaining scheduling order deadlines.

### IV. Conclusion

For the foregoing reasons, the Motion is **GRANTED**.

## NOTICE

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 9th day of March, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge